# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| GRACE LILLIAN BLODGETT,<br>    *Plaintiff*,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>    *Defendant*. | No. 3:16-cv-02110 (JAM) |

## RULING GRANTING MOTION TO REMAND

Plaintiff Grace Lillian Blodgett alleges that she is disabled and cannot work primarily because of migraines, chronic severe pain, and deficits in attention and memory. Pursuant to 42 U.S.C. § 405(g), she seeks review of the final decision of the Commissioner of Social Security denying her claim for social security disability and supplemental security income. On August 28, 2017, plaintiff filed a motion to reverse the decision of the Commissioner. Doc. #14. The Commissioner has not responded to plaintiff's motion. For the reasons explained below, I will grant plaintiff's motion and remand the case to the Commissioner for further proceedings.

### BACKGROUND

The Court refers to the transcripts provided by the Commissioner. *See* Doc. #12-1 through Doc. #12-10. Plaintiff filed an application for supplemental security income and disability insurance benefits on October 22, 2012, alleging a disability onset date of October 5, 2012. Plaintiff most recently worked in various capacities for Metro Ministries of Brooklyn, New York, ending her 10-year tenure with her employer in 2012 for medical reasons. Plaintiff's claims were denied on February 15, 2013, and again upon reconsideration on May 3, 2013. Plaintiff then filed a written demand for a hearing.

Plaintiff appeared and testified at a hearing before Administrative Law Judge (ALJ) Barry Best on January 22, 2015. Plaintiff was represented by counsel. A vocational expert testified at the hearing. On March 27, 2015, the ALJ issued a decision concluding that plaintiff was not disabled within the meaning of the Social Security Act. *See* Doc. #12-3 at 22–39. After the Appeals Council denied plaintiff's request for review, plaintiff filed this federal action.

To qualify as disabled, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [a claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations) having requirements which [a claimant] [is] able to meet with [her] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(a)–(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

To evaluate a claimant's disability, and to determine whether she qualifies for benefits, the agency engages in the following five-step process:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits [his] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed [in the so-called "Listings"] in 20 C.F.R. pt. 404, subpt. P, app.

> 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [he] has the residual functional capacity to perform [his] past work. Finally, if the claimant is unable to perform [his] past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122–23 (2d Cir. 2012) (alteration in original) (citation omitted); *see also* 20 C.F.R. § 416.920(a)(4)(i)-(v). In applying this framework, an ALJ can find a claimant to be disabled or not disabled at a particular step and can make a decision without proceeding to the next step. *See* 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proving the case at steps one through four; at step five, the burden shifts to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since October 5, 2012, the date of the alleged onset of her disability. Doc. #12-3 at 24. At step two, the ALJ found that plaintiff suffered from the following "severe impairments" during the relevant time period: fibromyalgia, osteoarthritis, organic mental disorder, and migraines. *Ibid.*

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 25.

At step four, the ALJ found that plaintiff had "the residual functional capacity to perform work at the light exertional level, as defined in 20 C.F.R. 404.1567(b) and 416.967(b)," but with

3

the following limitations: plaintiff "is able to maintain concentration and attention sufficient to perform only uncomplicated work tasks over an eight hour workday, assuming short work breaks on average every two hours, with no more than occasional changes in the work setting." *Id.* at 27. In formulating this residual functional capacity (RFC), the ALJ "accorded great weight" to administrative findings of fact made by the non-examining medical and psychological consultants for the state agency. *Id.* at 30. By contrast, the ALJ concluded that the opinion of plaintiff's primary treating physician, Dr. Claire Warren, "cannot be afforded significant evidentiary weight." *Id.* at 29. The ALJ also found that while plaintiff's "medically determinable impairments could reasonably be expected to cause some symptoms of the type she alleges, . . . her statements concerning the intensity, persistence and limiting effects of these symptoms (and some of those made on her behalf) are not credible." *Id.* at 27. Also at step four, the ALJ concluded that plaintiff could not perform any of her past relevant work. *Id.* at 30.

At step five, after considering the plaintiff's age, education, work experience, and RFC, the ALJ concluded that jobs that plaintiff can perform exist in significant numbers in the national economy. *Id.* at 31. In reaching this conclusion the ALJ relied on the testimony of the vocational expert, Kenneth R. Smith, who testified at the administrative hearing that plaintiff could perform representative occupations such as cashier, cleaner, light assembler, sedentary assembler, hand packager, or inspector. *Id.* at 31–32. The ALJ ultimately held that plaintiff was not disabled within the meaning of the Social Security Act. *Id*. at 32.

The Appeals Council denied plaintiff's request for review on October 19, 2016. Thereafter, plaintiff filed this case on December 22, 2016. The Commissioner filed an answer with the transcripts of the administrative record on March 6, 2017. Doc. #12. The Court then entered a scheduling order requiring plaintiff to file her motion to reverse and/or remand by

August 28, 2017. Doc. #13. The Commissioner then had sixty days to file a response. *Ibid.* Plaintiff filed her motion on August 28, *see* Doc. #14; the Commissioner's response was due October 27. The Commissioner did not file any response or opposition to plaintiff's motion.

**DISCUSSION**

The Court may ordinarily "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, this Court must uphold the Commissioner's decision if it is supported by substantial evidence and even if this Court might have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart,* 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

These are the rules of review that ordinarily apply if the Commissioner lives up to her obligations to participate in good faith in the litigation of the court action. But where, as here, the Commissioner does not trouble herself with filing any kind of an objection or opposition to a plaintiff's motion for reversal or remand, then the Court may apply a more relaxed standard of review akin to the standard that would be applied in the context of a default judgment against the government. *See Marziliano v. Heckler*, 728 F.2d 151, 157–58 (2d Cir. 1984); *Alameda v. Sec'y of Health, Ed. & Welfare*, 622 F.2d 1044 (1st Cir. 1980). A court need only decide if there is "evidence satisfactory to the court" pursuant to Fed. R. Civ. P. 55(d) to allow for a grant of relief—that is, to determine if "the claimant's district court brief and reference to the record appeared relevant, fair and reasonably comprehensive," and to ensure that plaintiff's briefing

does not errantly "refer to evidence supporting the Secretary's decision that was clearly 'substantial.'" *Id.* at 1049. The Court's focus in this context should be on whether the claimant has adduced "some evidence that the Secretary's conclusions are not supported by substantial evidence." *Id.* at 1047. A court need not conduct a *de novo* review of the entire administrative record or dream up arguments that the Commissioner might have made if the Commissioner had filed an opposition to plaintiff's motion. In any event, whatever standard of review that I might apply, I would remand this case for the reasons stated below.

Plaintiff advances three claims of error by the ALJ. First, plaintiff claims that the ALJ failed to evaluate plaintiff's complex regional pain syndrome. Second, plaintiff claims that the ALJ improperly applied the treating physician rule in weighing Dr. Warren's opinion. Finally, plaintiff claims that the ALJ's RFC determination was not supported by substantial evidence.

### *Complex Regional Pain Syndrome*

Plaintiff's first objection to the ALJ's decision is that the ALJ failed to evaluate plaintiff's complex regional pain syndrome. Social Security Ruling 03-02p addresses the condition known as complex regional pain syndrome ("CPRS") or, alternatively, reflex sympathetic dystrophy ("RSD") and sets forth guidelines for addressing disability claims based on CRPS. *See* Titles II and XVI: Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome (SSR 03-02p), 68 Fed. Reg. 59971 (Oct. 20, 2003). "These terms are synonymous and are used to describe a unique clinical syndrome that may develop following trauma." *Id.* at 59972. The common manifestations of this impairment include "complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma." *Ibid.*

On January 3, 2014, plaintiff presented at the emergency department of Backus Hospital complaining of pain in her right heel stemming from her "accidentally smash[ing] her right heel against a wooden [b]ureau" Doc. #12-9 at 105. A radiological scan revealed no acute trauma, and plaintiff was furnished with a cam walker for comfort. *Id.* at 111, 115. Plaintiff followed up with an orthopedic specialist, Dr. Arcand. *Id.* at 49. At her follow up, Dr. Arcand noted that plaintiff "has a significant contusion to her heel and she may also be developing some degree of [CRPS]." *Ibid.* Plaintiff was referred to physical therapy. Her heel was "still very painful" after one month of physical therapy, and plaintiff was referred by Dr. Arcand to a pain specialist, Dr. Hargus, for an evaluation for possible CRPS. *Id.* at 51.

Dr. Hargus examined plaintiff on March 20, 2014. At first he was skeptical of a diagnosis of CRPS and favored a diagnosis of an effusion or Achilles tendonitis. *Id.* at 165. He ordered an MRI, which revealed that there was no inflammation of the tendon nor any fluid in her heel. *Id.* at 167. He recommended a cortisone injection, which was later administered by Dr. Arcand to little effect. *Id.* at 52, 54, 167.

Dr. Hargus examined plaintiff again on June 16, 2014. He agreed with Dr. Arcand's recommendation that plaintiff receive lumbar sympathetic blocks to alleviate her symptoms. *Id.* at 173–74. Dr. Hargus performed six blocks over the ensuing months. Plaintiff received her last block on October 2, 2014. At that time, Dr. Hargus observed "some minor improvement at this stage . . . although I do notice her gait is improved[,] [s]he still has a limp but nowhere near as profound as previously." *Id.* at 196.

On October 13, 2014, Dr. Hargus noted his belief that "the diagnosis . . . is firm that this is complex regional pain syndrome type I, minimal improvement." He noted that her "gait appears to be improved. She still has a limp. The foot is bluish . . . . Pulses are palpable, foot blue

7

and cold, slight edema." *Id.* at 198. Then, on December 22, 2014, plaintiff followed up with Dr. Hargus once more. He noted the blocks resulted in "slight improvement . . . , not significant, though. She has still very considerable pain." Doc. #12-10 at 17.

The ALJ's decision does not mention CRPS. Rather, the ALJ briefly discussed plaintiff's treatment for her heel and foot following her visit to the hospital in early January 2014. He acknowledged the treatment she received throughout the course of the year and noted the treatment yielded "positive results." The ALJ concluded, however, that plaintiff's "right foot condition reported [in December 2014] by Dr. Hargus was not of long-standing duration" in view of the fact that certain clinical notes from visits to other providers in the months prior to December 2014 did not reveal any complaints of foot issues. Doc. #12-3 at 29 (citing Doc. # 12-9 at 144, 220–22). The ALJ did not discuss the criteria for addressing CRPS claims as provided in SSR 03-02p.

It was error for the ALJ not to evaluate plaintiff's CRPS. First, the ALJ failed to identify CRPS as a medically determinable impairment. "For purposes of Social Security disability evaluation, RSDS/CRPS can be established in the presence of persistent complaints of pain that are typically out of proportion to the severity of any documented precipitant" and one of the following clinically documented signs in the affected region: swelling, changes in skin color or texture, changes in sweating, changes in skin temperature, abnormal hair or nail growth, osteoporosis, or involuntary movements of the affected area. SSR 03-02p, 68 Fed. Reg. at 59973.

Here, the ALJ himself alluded to the fact that plaintiff's heel pain was out of proportion to the precipitating injury by noting that plaintiff sought emergency care for an acute right heel injury but her exams revealed normal functioning and no acute abnormality. *See* Doc. #12-3 at 29. The clinical notes from Dr. Hargus and Dr. Arcand reveal that plaintiff suffered from pain in

8

her right heel throughout 2014. Doc. #12-9 at 49, 52, 54, 55, 164, 171, 188, 192, 196, 198; Doc. #12-10 at 17. The additional signs of CRPS supporting Dr. Hargus's diagnosis are documented in his clinical notes. Dr. Hargus noted on June 16, 2014, that there were differences in nail growth and sweatiness between plaintiff's right and left foot, some edema, and color changes. Doc. #12-9 at 173. In October, Dr. Hargus noted that her foot was "blue and cold." *Id.* at 198. Thus, the ALJ plainly failed to recognize plaintiff's well-supported CRPS diagnosis.

Because the ALJ did not acknowledge plaintiff's CRPS diagnosis, he did not follow the guidelines set forth in SSR 03-02p in discussing what he termed her "right foot condition." The ALJ concluded that her foot condition was not of "long-standing duration" because plaintiff did not report any problems with her foot when she treated with her primary physician in November 2014. Doc. #12-3 at 29.[1] But the absence of signs of CRPS during an examination does not mean that the condition does not persist. "[C]onflicting evidence in the medical record is not unusual in cases of [CRPS] due to the transitory nature of its objective findings." SSR 03-02p, 68 Fed. Reg. at 59974. Signs of CRPS "may be present at one examination and not appear at another." *Ibid.* Therefore, "transient findings . . . do not affect a finding that a medically determinable impairment is present." *Ibid.* Plaintiff's medical records detail continual treatment from the time of the precipitating injury at the very beginning of 2014 through the balance of the year. The absence of any documentation of signs of her "right foot condition" on a single clinical visit should not have so significantly affected the ALJ's evaluation of the condition.

The failure to properly evaluate plaintiff's CRPS in accordance with SSR 03-02p requires remand. It undermined the ALJ's conclusions regarding medical opinion evidence, plaintiff's

---

[1] The ALJ also noted that when plaintiff presented at the emergency department for facial swelling on August 20, 2014, her workup indicated that she "had normal functioning of all other systems." Doc. #12-3 at 29. To the contrary, the HPI, or history of present illness, from that visit notes that she had CRPS at that time. Doc. #12-9 at 142.

9

credibility, and, ultimately, the RFC determination. This is especially the case where, as here, the ALJ rejected plaintiff's statements and the opinion of her primary physician on grounds that they were inconsistent with objective medical evidence. With CRPS, "the lack of supporting diagnostic and clinical findings is to be expected and may not provide a sound basis for rejecting a claimant's complaints of severe pain." *Cooley v. Colvin*, 2013 WL 12224205, at *3–4 (N.D.N.Y.), *report and recommendation adopted*, 2013 WL 12224206 (N.D.N.Y. 2013); *Bernstein v. Astrue*, 2010 WL 746491, at *7 (M.D. Fla. 2010) (noting that ALJ's failure to adequately evaluate CRPS likely affected ALJ's evaluation of medical opinion).

Thus, "reviewing courts have insisted that where CRPS is present as a severe impairment the ALJ must evaluate the claim under the rubric of SSR 03-02p or have the matter remanded." *Mills v. Comm'r of Soc. Sec.*, 2017 WL 4083149, at *5 & n.46 (N.D. Ohio) (collecting cases), *report and recommendation adopted*, 2017 WL 4077142 (N.D. Ohio 2017). On remand, the ALJ should evaluate plaintiff's CRPS as set forth in SSR 03-02p.

### *Treating Physician Rule*

Next, plaintiff contends that the ALJ improperly applied the treating physician rule in weighing the opinion of plaintiff's primary treating physician Dr. Claire Warren. Doc. #14-1 at 6. While not necessarily quarreling with the ALJ's decision not to give Dr. Warren's opinion controlling weight, plaintiff contends that the ALJ failed to apply the regulatory factors in determining how much weight Dr. Warren's opinion should have. *Id.* at 7.

When the ALJ determines that a treating physician's opinion should not be given controlling weight, the ALJ must consider a number of factors to determine the proper weight to assign, including "the [l]ength of the treatment relationship and the frequency of examination; the [n]ature and extent of the treatment relationship; the relevant evidence . . . , particularly

medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (internal quotation marks and citations omitted) (alterations in original); *see generally* 20 C.F.R. § 404.1527(c).

The Second Circuit has made clear that the ALJ must "explicitly consider" the regulatory factors for determining the weight to be given to a non-controlling opinion of a treating physician. *Greek v. Colvin*, 802 F.3d 370, 376 (2d Cir. 2015); *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). After considering these factors, the ALJ is required to "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion. . . . Failure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Burgess*, 537 F.3d at 129–30; *see also* 20 C.F.R. § 404.1527 ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.").

The ALJ acknowledged elsewhere in his decision that Dr. Warren was plaintiff's primary treating source. Doc. #12-3 at 28. But there is no indication in the decision that the ALJ considered the requisite factors. The ALJ concluded that Dr. Warren's opinion was not consistent with other evidence in the record. *Id.* at 29. The ALJ otherwise surmised how "[t]he possibility always exists that a doctor may express an opinion in the effort to assist a patient with whom he or she sympathizes for one reason or another." *Ibid.* But the ALJ does not appear to have considered, for example, the length of the treatment relationship, frequency of examination, the nature and extent of the treatment relationship, or the level of specialization, with respect to Dr. Warren. Accordingly, the Court cannot conclude that the ALJ met his obligation to

11

"explicitly consider" such factors in deciding "to override the opinion of a treating physician." *Selian*, 708 F.3d at 418.

In particular, it is not clear that the ALJ considered the length of the treatment relationship in weighing Dr. Warren's opinion. Dr. Warren began seeing plaintiff as a patient in 2004. Doc. #12-8 at 135. She has observed plaintiff, with varying degrees of frequency, during the progressive worsening of plaintiff's conditions. *See generally id.* at 105–153; Doc. #12-9 at 17–22, 58–103. Ordinarily, "the source's medical opinion" is accorded "more weight" the longer a treating source has treated a claimant and the more times the claimant has been seen by a treating source. 20 C.F.R. § 404.1527(c)(2)(i). It is impossible to discern whether the tenure of the treatment relationship was considered in weighing Dr. Warren's opinion.

Additionally, as previously noted, the ALJ's failure to evaluate plaintiff's CRPS infected his determination of the weight of Dr. Warren's opinion. The ALJ did not cite any specific objective evidence that undermines Dr. Warren's opinion. Nevertheless, in his decision, the ALJ relied on the evaluation of Dr. Ranganthan, who reported that plaintiff "reported that she uses a cane or walker 'to be on the safe side' but she was able to walk without it, with only 'slightly unsteady' tandem gait." Doc. #12-3 at 28 (quoting Doc. #12-9 at 113). But Dr. Ranganthan's report, which was from January 17, 2013, antedates the onset of plaintiff's CRPS. Upon proper evaluation of plaintiff's CRPS, the ALJ may well determine that Dr. Warren's opinion, especially regarding plaintiff's ability to walk or stand, finds more support in the record.

Because I conclude that a remand is required on the grounds of the ALJ's legal errors in failing to properly evaluate plaintiff for CRPS and the misapplying the treating physician rule, I need not decide whether the ALJ's determination of plaintiff's RFC is supported by substantial evidence. On remand, the ALJ should consider plaintiff's remaining arguments as to that issue.

## CONCLUSION

Plaintiff's motion to reverse and/or remand the Commissioner's decision (Doc. #15) is GRANTED. On remand, the ALJ should evaluate plaintiff for comprehensive regional pain syndrome in accordance with SSR 03-02p, and properly apply the regulatory factors in weighing the opinion of Dr. Warren.

It is so ordered.

Dated at New Haven this 24th day of January 2017.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge